**FILED**
**Apr 03, 2019**
**02:34 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | | |
|---|---|---|
| Velvet Touchette,<br>　　　　Employee, | ) | Docket No.: 2018-05-0417 |
| v. | ) | |
| Speedway, LLC,<br>　　　　Employer, | ) | State File No.: 95598-2017 |
| And | ) | |
| Old Republic Ins. Co.<br>　　　　Insurer. | ) | Judge Robert Durham |

---

## EXPEDITED HEARING ORDER FOR  MEDICAL BENEFITS

---

This case came before the Court for an Expedited Hearing on March 27, 2019. The issues are whether Ms. Touchette provided sufficient medical proof to establish that her left shoulder complaints arose primarily out of and in the course and scope of employment, and if so, to which benefits is she entitled.[1] The Court holds Ms. Touchette is likely to succeed at trial in establishing medical causation and orders Speedway to provide her continuing medical benefits.

### History of Claim

At a previous expedited hearing, the Court held that Ms. Touchette was likely to prevail in proving a work injury to her left shoulder that would entitle her to treatment with a previously unauthorized orthopedist at Seven Springs Orthopedics. The orthopedist would determine whether Ms. Touchette's current left shoulder complaints arose primarily out of and the course and scope of her employment. The Court also held that she did not have sufficient medical evidence to establish entitlement to temporary disability benefits. The Appeals Board affirmed.

---

[1] Before the hearing, the parties agreed that these were the only issues to be determined at this time. The parties also agreed to limit new evidence to the records and deposition of Dr. Brandon Downs with argument to be made through briefs and by telephone.

1

Afterward, Speedway had difficulty complying with the Court's order. Seven Springs refused to provide an orthopedist to treat Ms. Touchette. Other attempts at finding an orthopedist also failed. She finally saw Dr. Brandon Downs on her own.

After examining Ms. Touchette and reviewing her medical records and an MRI, Dr. Downs recommended a left shoulder arthroscopy to repair a perceived glenoid labrum tear. He also wrote a causation letter. Based on her history, he stated to a reasonable degree of medical certainty that the shoulder injury is "51% or greater related to the work injury." Dr. Downs did not provide an opinion on pre-surgery work restrictions.

Speedway then took Dr. Downs' deposition. Early on, Speedway's Counsel asked if Dr. Downs stated in his causation letter that Ms. Touchette's shoulder condition was primarily caused by the work incident. Dr. Downs confirmed that he did. Counsel asked Dr. Downs to explain his understanding of "51 percent or greater related to or caused by" the work injury. He responded that it means "it is slightly more likely than not." Counsel then queried whether "it's more likely than not to have been caused by the accident," to which he answered, "Right."

On further examination, Dr. Downs admitted that he could not differentiate between the acuteness and chronicity of her left shoulder injury based on the MRI. He also conceded that Ms. Touchette's initial records only referred to chest pain without a description of left shoulder problems. Following these concessions, Counsel asked Dr. Downs whether he still maintained that Ms. Touchette's condition "more likely than not" arose from her work injury. He responded, "Yeah," and then explained that, while documented reports of initial shoulder pain would have made it clearer, she "could have definitely" had chest pain that masked her shoulder problems at the outset.

Counsel then pressed further by asking Dr. Downs if he received training regarding the causation standard. When Dr. Downs said yes, the following exchange occurred:

Q:     Okay. So you understand that the primarily-caused-by is different from the more-likely-than-not standard?
A:     Uh-huh. Right.
Q:     Does that make sense?
A:     It does.

Mr. Callison then asked whether Dr. Downs could state within a reasonable degree of medical certainty that the conditions that necessitate surgery were primarily caused by work. Dr. Downs stated he could not, since it would be "difficult to say primarily responsible."

Ms. Touchette then examined Dr. Downs.  She also asked about causation:

Q:     Okay.  So I'm just going to ask you to reiterate once again.   So you do believe this [shoulder injury] is 51 percent caused—or work related?
A:     Yeah, as my causation stated—that letter stated, yes.

On redirect, Counsel revisited the issue by advising Dr. Downs that he said earlier that Ms. Touchette's condition "could be" primarily related to her employment:

A:     And that was in reference to that work comp regulation or whatever you call it that we've talked about where it's a higher burden.
Q:     Right.
A:     That's the primarily responsible.
. . . .
Q:     You're saying that think it's more likely than not that her shoulder condition occurred at work?
A:     Right.
Q:     But you're saying that you can't state that it's more than 50 percent the shoulder is caused by the work.
A:     Right.  I guess that's that higher burden of the problem, yeah.

On recross, Ms. Touchette made one more attempt to determine whether her condition is 51% work-related:

A:     So, it's sort of two different things.  And I'm not a lawyer, so I have to navigate these things as best I can.  But the causation letter states exactly what it states.  You know, you both have that letter.  And I think what Counsel is asking me is that predominant origin of the problem, which is a higher burden than that.  That's the one that it's a little hard to say, that like all the shoulder problems are originating from the time of the injury, which is a little different than saying it's more likely than not work related.  (to Speedway's Counsel)  Fair?

Counsel:     I'm not answering questions here.

Dr. Downs:  But that is more in the work comp regulation.  It's not really asking for an opinion.  That's my understanding of what I'm trying to answer; I'll put it that way.

Finally, with regard to temporary disability benefits, Dr. Downs outlined the restrictions Ms. Touchette would have after surgery, but he did not provide an opinion as

3

to any recommended restrictions before surgery.[2]

## Findings of Fact and Conclusions of Law

Ms. Touchette does not have to prove every element of her claim by a preponderance of the evidence to obtain relief at an expedited hearing. Instead, she must present sufficient evidence that she is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2018); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at \*7-8, 9 (Mar. 27, 2015).

The primary issue here is causation. Speedway does not dispute that Ms. Touchette could likely prove she sustained a work injury on December 2, 2017. However, it contends that she failed to provide medical proof that her current shoulder complaints and need for surgery arose *primarily* out of and in the course and scope of employment. To do that, she must establish she is likely to prove "to a reasonable degree of medical certainty that [the injury] contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Reasonable degree of medical certainty means "it is more likely than not considering all causes, as opposed to speculation or uncertainty." *See* Tenn. Code Ann. § 50-6-102(14).

Dr. Downs' causation letter stated that he believed Ms. Touchette's shoulder condition is "51% or greater related to her work injury." As a result, Speedway took Dr. Downs' deposition to explore the issue further. At first, he maintained that the shoulder condition was "more likely than not" to have been caused by the work incident, despite the fact that Ms. Touchette's initial records only record chest pain and he could not differentiate between an acute and chronic injury from the MRI. It was not until Speedway's Counsel asked him if he understood that "primarily-caused-by is greater than the more-likely-than-not standard" that his opinion became less than clear.

However, Counsel's statement of the applicable standard is incorrect. "Primarily-caused-by" is not greater than "more likely than not" under section 50-6-102. Indeed, the phrases "reasonable degree of medical certainty," "more than fifty percent," and "more likely than not" are simply used to define and clarify the "arising primarily out of and in the course and scope of employment" standard in section 50-6-102(A).

Upon hearing the incorrect standard, Dr. Downs first responded that he could not say whether the work injury was "primarily responsible" for Ms. Touchette's shoulder condition. However, on cross-examination, Dr. Downs agreed with Ms. Touchette that her condition was, as stated in his letter, "51 percent caused—or work related." Dr.

---

[2] The only references to pre-surgery restrictions are from Ms. Touchette's family physician in December 2017, who placed her on temporary restrictions. Later, when Ms. Touchette told her that Speedway did not have light duty, her physician took her off work until she had an MRI. Ms. Touchette also later saw an unauthorized physician's assistant, who took her off work until she had an MRI.

4

Downs' testimony as to causation continued to seemingly bounce from one position to another depending on who asked the question; however, he repeatedly referred back to the "higher burden" Counsel described earlier.

During his last exchange with Ms. Touchette, Dr. Downs made a statement that exemplifies to the Court the confusion caused by Counsel's incorrect statement of the law: "That's the one that it's a little hard to say, that like *all the shoulder problems* are originating from the time of that injury, which is a little different than saying *it's more likely than not work-related.*" He then asked Counsel if that was "fair" and finally stated that it was his understanding that the "work comp regulation," which presumably contained the inaccurate standard, was not "really asking for an opinion."

The Court finds that Counsel's misstatement of the law colored Dr. Downs' testimony, since he consistently referred to the "higher standard" afterward. Thus, the Court will give little weight to those opinions. Instead, the Court will focus on the opinions Dr. Downs offered before the statement was made. In his causation letter, Dr. Downs stated that Ms. Touchette's injury was 51% or greater related to the work incident. He followed up this statement early in his deposition by stating the shoulder condition was more likely than not caused by the incident.

A medical opinion does not have to exactly track statutory language, so long as the opinion combined with the circumstances of the claim are sufficient to establish the employee is likely to prevail on causation. *See Lee v. W. Plastics*, 2016 TN Wrk. Comp. App. Bd. LEXIS 53, at *8-9 (Oct. 20, 2016). The Appeals Board recently addressed this issue in *Miller v. Old Folks Mission Ctr., Inc.*, 2019 TN Wrk. Comp. App. Bd. LEXIS 1, at *18-22 (Jan. 9, 2019).

In *Miller*, the treating physician stated he considered the employee's condition a "work-related injury." The Board held that, while it would not be sufficient to prove causation at a compensation hearing, the opinion was enough to establish the *likelihood* of proving causation, especially when coupled with the employee's history and the lack of contrary medical evidence. *Id.* at *22. Here, the Court holds that Dr. Downs' initial opinions, when combined with Ms. Touchette's history, are sufficient to establish the likelihood that she will prove causation at trial. Thus, she is entitled to medical treatment.

The Court also holds that, given Speedway was unable to find orthopedists to evaluate and treat Ms. Touchette, she was justified in seeking treatment on her own with Dr. Downs. "An employer may risk being required to pay for unauthorized treatment if it does not provide the treatment made reasonably necessary by the work injury as required by Tennessee Code Annotated section 50-6-204(a)(1)(A)." *Hackney v. Integrity Staffing Solutions,* 2016 TN Wrk. Comp. App. Bd. LEXIS 29, at *8-9 (July 22, 2016). Therefore, Dr. Downs shall be designated as Ms. Touchette's authorized physician to treat her work-

related left-shoulder injury. In addition, Speedway shall pay all past medical expenses related to Dr. Downs' treatment for this injury.

As to temporary disability, Dr. Downs gave his opinion regarding post-surgery restrictions, but he did not provide any testimony regarding reasonable physical restrictions before surgical repair.[3] Thus, the Court holds that Ms. Touchette has not shown she is likely to prevail on the issue of past temporary disability benefits at this time.

IT IS, THEREFORE, ORDERED that:

1. Dr. Downs is designated as Ms. Touchette's authorized physician for treatment of her work-related left shoulder injury. Further, Speedway shall pay all medical expenses incurred through Dr. Downs' treatment of her work-related injury.

2. Ms. Touchette's request for past temporary disability benefits is denied at this time.

3. This matter is set for a Scheduling Hearing on May 30, 2019, at 1:30 p.m. C.S.T. The parties or their counsel must call 615-253-0010 or toll-free at 855-689-9049 to participate in the hearing. Failure to call may result in a determination of the issues without your participation.

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit by email at WCCompliance.Program@tn.gov.

**ENTERED THIS THE 3rd DAY OF APRIL, 2019.**

---

[3] The only information regarding pre-surgery restrictions is from Ms. Touchette's family physician, who took her off work shortly after the injury until she could see an orthopedist, and from a physician's assistant, who recommended she be off work until she had an MRI.

**Robert V. Durham, Judge**
**Court of Workers' Compensation Claims**

## APPENDIX

Technical Record

1. Request for Expedited Hearing
2. Order Setting Expedited Hearing
3. Speedway's Expedited Hearing Brief
4. Expedited Hearing Order

Exhibits

1. Deposition of Dr. Downs with Attached Exhibits
2. Mr. Touchette's affidavit
3. Medical records made exhibits at previous expedited hearing

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was sent to the following recipients by the following methods of service on March 3, 2019.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Velvet Touchette | X | | X | 220 Indian Lake Dr., Apt. 3902 Murfreesboro, TN 37128 |
| J. Allen Callison | | | X | Allen.callison@mgclaw.com |

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board.  To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed.  When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal.  You may request from the court clerk the audio recording of the hearing for a $25.00 fee.  If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the hearing.  The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board.  If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence.  The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement.  All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# EXPEDITED HEARING NOTICE OF APPEAL

Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

Docket #: _____

State File #/YR: _____

**Employee** _____

v. 

**Employer** _____

## Notice

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____ to the Workers' Compensation Appeals

Board. [List the date(s) the order(s) was filed in the court clerk's office]

**Judge**_____

## Statement of the Issues

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

## Additional Information

**Type of Case** [Check the most appropriate item]

- ☐ Temporary disability benefits
- ☐ Medical benefits for current injury
- ☐ Medical benefits under prior order issued by the Court

## List of Parties

**Appellant (Requesting Party):**_____ At Hearing: ☐Employer ☐Employee

Address:_____

Party's Phone:_____ Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____  SF#: _____  DOI: _____

## Appellee(s)
**Appellee (Opposing Party):** _____ At Hearing: ☐ Employer ☐ Employee

Appellee's Address: _____

Appellee's Phone: _____ Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Address: _____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules of Board of Workers' Compensation Appeals on this the _____ day of _____, 20 ___

[Signature of appellant or attorney for appellant] _____



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____    2. Address: _____

3. Telephone Number: _____    4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____    Relationship: _____

_____    Relationship: _____

_____    Relationship: _____

_____    Relationship: _____

6. I am employed by: _____

    My employer's address is: _____

    My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ | per month | beginning _____ |
| SSI | $ _____ | per month | beginning _____ |
| Retirement | $ _____ | per month | beginning _____ |
| Disability | $ _____ | per month | beginning _____ |
| Unemployment | $ _____ | per month | beginning _____ |
| Worker's Comp. | $ _____ | per month | beginning _____ |
| Other | $ _____ | per month | beginning _____ |

LB-1108 (REV 11/15)                                                                                       RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental  $ _____ per month

Groceries          $ _____ per month     Telephone       $ _____ per month

Electricity        $ _____ per month     School Supplies $ _____ per month

Water              $ _____ per month     Clothing        $ _____ per month

Gas                $ _____ per month     Child Care      $ _____ per month

Transportation     $ _____ per month     Child Support   $ _____ per month

Car                $_____ per month

Other              $ _____ per month (describe: _____ )

10. Assets:

Automobile              $ _____    (FMV) _____

Checking/Savings Acct. $ _____

House                   $ _____    (FMV) _____

Other                   $ _____    Describe:_____

11. My debts are:

Amount Owed                    To Whom

_____      _____

_____      _____

_____      _____

_____      _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT


Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.


_____
NOTARY PUBLIC

My Commission Expires:_____

LB-1108 (REV 11/15)                                              RDA 11082